UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                         Case No. 12-20459
                                                                  Honorable Thomas L. Ludington

v.

ANTHONY BENNETT,

                Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S
MOTION TO SEVER AND DENYING DEFENDANT'S MOTIONS FOR
A BILL OF PARTICULARS, DISCOVERY, AND TO DISMISS**

On June 28, 2012, Saginaw Chippewa tribal police, working with the Michigan State Police and FBI agents, discovered Carnel Chamberlain's remains buried under the home shared by Jaimee Chamberlain, Carnel's mother, and Anthony Bennett, Jaimee's boyfriend. The remains were badly burned and unrecognizable.

The same day police found Carnel's remains, Bennett was charged with assault of a child under sixteen resulting in substantial bodily injury. Specifically, Jaimee explained that on two occasions in late May or early June 2012, Bennett physically abused Carnel. *See* Compl. 1, ECF No. 1. A grand jury indictment was returned on July 11, 2012, charging Bennett with the same crime. Then, four months later, a first superseding indictment was returned, charging Bennett with murder in the first degree, assault of a child resulting in substantial bodily injury, assault of a child, assault with a dangerous weapon, animal cruelty, and two counts of witness tampering.[1]
*See* First Super. Indictment 1–4, ECF No. 11. Trial is set to commence on January 14, 2014.

---

[1] Notably, the witness-tampering counts do not concern conduct that occurred after Bennett was indicted. Instead, the government alleges that months before Carnel was killed, Bennett threatened two individuals to keep quiet about physical harm he had perpetrated against Jaimee, and his threats to do the same to Carnel.

Between September 30 and October 7, 2013, Bennett filed four pretrial motions. The first is to sever counts 1 through 3 (the murder and child-assault counts) from counts 4 through 7 (those for assault with a weapon, animal cruelty, and witness tampering). Bennett's second motion is for a bill of particulars with respect to the witness-tampering counts. The third motion concerns supplemental discovery. Finally, with his fourth motion Bennett seeks the dismissal of the first-degree murder charge.

Based on the following, the motion to sever will be granted in part, the motions for a bill of particulars and supplemental discovery will be denied, and the motion to dismiss will be denied as well.

## I

Bennett's first motion seeks to sever the murder and child-assault charges (counts 1–3) from those involving assault with a weapon, animal cruelty, and witness tampering (counts 4–7). He argues that the first three charges concern conduct that is "not of the 'same or similar character'" as the latter four charges. *See* Def.'s Mot. Sever, ECF No. 31. As to the charge for animal cruelty (count 5), the government agrees and "joins in Bennett's request to sever the count." Pl.'s Resp. Sever 7 (filed under seal). So Bennett's motion will be granted as to count 5. The motion will also be granted as to counts 6 and 7 because those counts are not properly joined with counts 1 through 3. As to count 4, Bennett's motion to sever will be denied.

## A

At this point some background of the charges themselves is appropriate. Count 1, charging Bennett with murder in the first degree, alleges that on or about June 21, 2012, Bennett killed Carnel Chamberlain. Count 1 further alleges that Carnel was not eighteen years old and was more than six years younger than Bennett at the time, and that Bennett killed Carnel

"willfully, deliberately, maliciously and with premeditation; . . . in the perpetration of child abuse; and . . . as a part of a pattern or practice of assault against a child . . . ."  First Super. Indictment 1.

Count 2 charges Bennett with assault of a child resulting in substantial bodily injury. Count 2 alleges that in or about the beginning of June 2012, Bennett assaulted Carnel, "a child under 16 years old, and the assault caused substantial bodily injury . . . ."  *Id*. at 2.  Count 3 alleges that in or about the beginning of June 2012, Bennett assaulted Carnel, a child under 16 years old.  *Id*.  From the face of the indictment, it is unclear whether these counts concern two assaults on different dates, or rather one assault with alternative theories of culpability.

Count 4 charges Bennett with assault with a dangerous weapon.  Specifically, Count 4 alleges that in or about the middle of June 2012, Bennett assaulted Jaimee Chamberlain with a baseball bat "while he had the intent to do bodily harm . . . ."  *Id*.

Count 5 charges Bennett with animal cruelty, alleging that in or about June 2012, Bennett "without just cause committed a reckless act, knowing or having reason to know that the act would case an animal to be killed, maimed or disfigured . . . ."  *Id*. at 3.

Finally, Counts 6 and 7 charge Bennett with witness tampering.  Although the two charges concern different individuals, they are otherwise identical: alleging that on or about March 23, 2012, Bennett "knowingly attempted to intimidate, threaten and corruptly persuade" an individual "with the intent to hinder, delay and prevent" the communication of information related to federal offenses.  *Id*. at 3, 4.

**B**

Federal Rule of Criminal Procedure 8 sets forth the conditions under which multiple offenses may be joined in a single indictment.  Under the rule, an indictment may charge a

defendant "in separate counts with 2 or more offenses" if those offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Whether joinder is proper under Rule 8(a) "is determined by the allegations on the face of the indictment." *United States v. Chavis*, 296 F.3d 450, 456–57 (6th Cir. 2002) (collecting cases). While Rule 8 "should be construed in favor of joinder," it is equally true that the "failure to meet the requirements of [Rule 8] constitutes misjoinder as a matter of law." *Id*. at 456 (quoting *United States v. Hatcher*, 680 F.2d 438, 440 (6th Cir. 1982)). In such a situation, this Court has "no discretion on the question of severance." *Chavis*, 296 F.3d at 456 (quoting *Hatcher*, 680 F.2d at 441).

However, even when joinder is proper under Rule 8, Federal Rule of Criminal Procedure 14 "authorizes a defendant to move for severance in situations where joinder of multiple offenses . . . would be prejudicial to the defendant." *Chavis*, 296 F.3d at 457 (collecting cases); *see also* Fed. R. Crim. P. 14(a) (if joining offenses "appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any other relief that justice requires.").

## C

Bennett brings his motion to sever under both Rule 8 and Rule 14, claiming that joinder of the first three charges with the latter four is inappropriate, and even if not, the charges are subject to severance "on the ground that their joinder causes [Bennett] undue prejudice." Def.'s Mot. Sever 4. Both issues are addressed below.

## 1

The first question to be resolved is what materials the Court can consider when determining if joinder is proper. *See Chavis*, 296 F.3d at 456–57. Bennett argues that the "face of the indictment" rule described in *Chavis* restricts the Court to information contained in the

- 4 -

indictment itself.  *See* Def.'s Mot. Sever 2.  The government, on the other hand, argues that the face of the indictment rule "and its application are not . . . as clear or as limiting as [Bennett] argues."  Pl.'s Resp. Sever 4.

When presented with varying circumstances, courts have applied the face of the indictment rule in different ways.  *See United States v. Jawara*, 474 F.3d 565, 576 (9th Cir. 2007) (discussing the way different circuits apply the rule).  For example, the Seventh Circuit has adopted a "literal" or "categorical" approach that pays "almost exclusive attention to likeness of 'class' or 'category' of the offenses."  *Id*. (quoting *United States v. Coleman*, 22 F.3d 126, 133–34 (7th Cir. 1994)).  As the Seventh Circuit noted in *Coleman*, "if offenses are of like class, although not connected temporally or evidentially, the requisites of proper joinder should be satisfied so far as Rule 8(a) is concerned."  *Coleman*, 22 F.3d at 133.

At the other end of the spectrum, the First Circuit employs "a broader, more holistic approach that looks to a variety of factors, including temporal proximity and potential for evidentiary overlap."  *Jawara*, 474 F.3d at 576.  Thus, it is no surprise that in *United States v. Edgar*, 82 F.3d 499 (1st Cir. 1996), the court considered "such factors as 'whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred."  *Id*. at 503 (quoting *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995)).

The Sixth Circuit has not expressly addressed the issue, but it did note in a recent case that "whether joinder of offenses is proper under Rule 8 is determined by reference *solely to the allegations in the indictment*," *United States v. Baltimore*, 482 F. App'x 977, 980 (6th Cir. 2012) (emphasis added), which comports with the Seventh Circuit's application of the "face of the indictment" rule.  *See also United States v. Locklear*, 631 F.3d 364, 368 (6th Cir. 2011) ("The

indictment otherwise alleges nothing to show that the two offenses were part of a common plan.").

The reasoning underlying *Locklear* is particularly helpful here.  In that case, the defendant was charged by indictment with one count of bank robbery and one count of felon in possession of a firearm.  The defendant robbed a bank on December 24, 2003, and three weeks later police found his car with the mask and trench coat worn during the robbery tucked neatly in the trunk.  In a bag with the mask, and in the trench coat's pockets, police also recovered a number of firearms.  Despite these connections, the Sixth Circuit limited its analysis to "the allegations in the superseding indictment" in holding that the bank robbery and firearm possession charges "were misjoined."  *Locklear*, 631 F.3d at 368, 369.

Accordingly, the analysis of whether Counts 4, 6, and 7 are properly joined with Counts 1 through 3 will be based on, but restricted to, the allegations contained in the November 7, 2012 superseding indictment.

**2**

Bennett correctly notes that the first three charges in the indictment "involve[e] alleged assaults and the subsequent death of 4-year-old Carnel Chamberlain[,]" events which occurred on the Isabella Reservation "in mid-June 2012."  Def.'s Mot. Sever 1.  He emphasizes that Count 4 involves assault with a dangerous weapon against Jaimee, not Carnel, and that Counts 6 and 7 address witness tampering alleged to have occurred in March 2012.  Because these three charges do not involve Carnel—and because the tampering charges occurred months before Carnel's death—Bennett argues they are not properly joined with Counts 1 through 3.  The government contends that the assault with a weapon and the witness tampering charges "are properly joined

with the murder and child abuse charges because they are all similar in character." Pl.'s Resp. Sever 3.

Despite his request that the Court limit its review to the allegations contained in the indictment, Bennett argues that Counts 1 through 3 and Count 4 will require "different proofs and arguments[,]" and therefore should be severed. Def.'s Mot. Sever 3. In so doing, he ignores the fact that the counts are, without doubt, of a similar character. Counts 2 and 3 involve assaults charged under 18 U.S.C. § 113(a). *See* First Super. Indictment 2. Count 4 also charges an assault under 18 U.S.C. § 113(a). *See* First Super. Indictment 2. From the face of the indictment, it is clear that all three counts concern alleged offenses that occurred in June 2012 on the Isabella reservation. *Id*. Even under the narrow Seventh Circuit formulation of the "face of the indictment" rule, Counts 1 through 3 and Count 4 "are of like class" so that "the requisites of proper joinder [are] satisfied so far as Rule 8(a) is concerned." *Coleman*, 22 F.3d at 133. They are properly joined under Rule 8(a).

The two counts for witness tampering, on the other hand, are not properly joined. The superseding indictment establishes that on March 23, 2012—three months before the offenses involved in Counts 1 through 3—Bennett "attempted to intimidate, threaten and corruptly persuade" two individuals "with the intent to hinder, delay and prevent" the communication of information related to the commission, or possible commission, of a federal offense. *See* First Super. Indictment 3–4. There is nothing in these allegations that is of a similar character to the assault and murder charges contained in Counts 1 through 3. Nor is there anything indicating that the witness tampering counts are "based on the same act or transaction" or are part "of a common scheme or plan" with the offenses involved in Counts 1 through 3. Accordingly,

Counts 6 and 7 must be severed.  *See Chavis*, 296 F.3d at 456 (where requirements of Rule 8 are not met courts have "no discretion on the question of severance.").

**3**

Despite the fact that Count 4 is properly joined with Counts 1 through 3 under Rule 8, Rule 14 still allows for severance if consideration of all four counts at once would unduly prejudice Bennett.  Because prejudice is lacking here, however, Count 4 will not be severed from Counts 1 through 3.

Unlike Rule 8, Rule 14(a) "is permissive, not mandatory."  *United States v. James*, 496 F. App'x 541, 546 (6th Cir. 2012) (citing Fed. R. Crim. P. 14(a) (providing that a district court "may" order severance)).  Thus, joinder will be improper only where it "is likely to prejudice the defendant in a way that, for example, incites or arouses the jury to convict on the remaining counts."  *James*, 496 F. App'x at 546 (brackets, ellipsis, and internal quotation marks omitted) (quoting *United States v. Dale*, 429 F. App'x 576, 578 (6th Cir. 2011)).

Here, Bennett will not suffer additional prejudice from a concurrent trial on charges 1 through 4.  Evidence concerning the assault of Jaimee in June 2012 is relevant to Bennett's relationship with Jaimee and Carnel near the time of death, and therefore may be admissible under the Federal Rules of Evidence.  Thus, a trial concerning all four counts will not be overly prejudicial.  *See United States v. Shields*, 480 F. App'x 381, 387–88 (6th Cir. 2012) (indicating that if evidence of one offense would be admissible at trial to prove a second offense, a trial involving both offenses is not unduly prejudicial).  Bennett's motion to sever will be denied as it relates to Count 4.

## II

With his second Motion, Bennett requests a bill of particulars as to Counts 6 and 7, those for witness tampering. Bennett argues that "[t]he indictment language is bare-bones," and that he "does not have adequate notice of what underlies these allegations." Def.'s Mot. Bill 1, ECF No. 32. Bennett's argument is not persuasive, and this motion will be denied.

An indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). A bill of particulars is meant "to minimize surprise and assist the defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *United States v. Martin*, 516 F. App'x 433, 455 (6th Cir. 2013) (brackets omitted) (quoting *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004)).

The indictment here precisely identifies the individuals Bennett is alleged to have tampered with and on what day. Further, the government indicates that it provided Bennett with a copy of one witness's statement "which described the charged events." Pl.'s Resp. Bill 2–3, ECF No. 40. It also asserts that it gave Bennett "the police report which was generated as a result of this incident." Pl.'s Resp. Disc. 2, ECF No. 41. Bennett did not file reply briefs contesting these assertions. As to Counts 6 and 7, the indictment is sufficient to assist Bennett in preparing his defense. He knows who he is alleged to have interfered with and the precise date, and no additional information is necessary at this time.

## III

Bennett also filed a motion for "Supplemental Discovery and Clarifications." *See* Def.'s Mot. Disc., ECF No. 34. He argues that the government's disclosures in this case have been

"incomplete." *Id*. at 2. Defense counsel does indicate, however, that "counsel for the respective parties have been working together and are optimistic that they will work these issues out without the need for Court intervention." *Id*. The government responded that "a discovery order is unnecessary" and also indicated that it agrees "to continue to work with Bennett to identify and resolve discovery issues to the extent possible without intervention from the Court." Pl.'s Resp. Disc. 1. The government then outlines how each of Bennett's requests has been complied with or will be complied with, and ends by affirming that it "shares in Bennett's optimism that many, if not all, of these issues can be worked out between the parties as they arise." *Id*. at 4.

That being the case, Bennett's motion will be denied as moot. The government indicated that each of Bennett's requests is being accommodated, and Bennett did not file a reply brief contesting the point. It is also quite apparent that both parties believe any disputes that do arise can be resolved without Court intervention. If an issue does arise that the parties are unable to attend to on their own, they can pursue motion practice at that time.

## IV

Bennett's final motion asserts that Count 1 of the superseding indictment, or at least one portion of it, should be dismissed. He contends that Count 1 of the indictment is based upon a statute (18 U.S.C. § 1111(a)) that is "unconstitutionally vague" and that violates his Eight Amendment right because it seemingly "would allow a conviction for first degree murder . . . even if the death was unintentional and not during the perpetration of other felonious activity." *See* Def.'s Mot. Dismiss, ECF No. 36. Bennett's motion to dismiss will be denied.

## A

Count 1 of the superseding indictment charges Bennett with the first-degree murder of Carnel Chamberlain. Under federal law, murder is defined as "the unlawful killing of a human

1:12-cr-20459-TLL-PTM   Doc # 49   Filed 12/04/13   Pg 11 of 18   Pg ID 318

being with malice aforethought." 18 U.S.C. § 1111(a). First-degree murder requires an element

in addition to malice aforethought: "the killing must either be willful, deliberate, malicious, and

premeditated, or be committed in the course of perpetrating one of the serious felonies listed in §

1111." *United States v. Pineda-Doval*, 614 F.3d 1019, 1037 (9th Cir. 2010) (internal quotation

marks and citation omitted). Section 1111 establishes that first-degree murder includes, among

others, any killings that are committed during the perpetration of child abuse or as a part of a

pattern or practice of assault or torture against a child or children. 18 U.S.C. § 1111(a)

The first superseding incitement charges Bennett with first-degree murder in one of three

alternate ways:

COUNT ONE
MURDER IN THE FIRST DEGREE
18 U.S.C. §§ 1111, 1151 and 1153

On or about June 21, 2012, in the Eastern District of Michigan, Northern
Division, within Indian country, as defined in 18 U.S.C. § 1151, that is, the
Isabella Reservation, Anthony Michael Bennett, an Indian, killed C.C., a child
who had not reached the age of eighteen and was more than six years younger
than Bennett, with malice aforethought. Bennett killed C.C. willfully,
deliberately, maliciously and with premeditation; killed C.C. in the perpetration of
child abuse; and killed C.C. as a part of a pattern or practice of assault against a
child; all in violation of 18 U.S.C. §§ 1111, 1151 and 1153.

First Super. Indictment 1.

Bennett's motion concerns the final clause in the indictment and the related provision in §

1111(a)—the charge that he "killed [Carnel] as a part of a pattern or practice of assault against a

child." He argues that the portion of § 1111(a) allowing for a first-degree murder conviction

based upon a pattern or practice of assaults "is unconstitutionally vague" because it does not

provide "adequate notice as to what constitutes the offense . . . ." Def.'s Mot. Dismiss 1–2.

Moreover, Bennett argues the same portion of § 1111(a) violates the Eighth Amendment because

- 11 -

it seemingly "would allow a conviction for first degree murder . . . even if the death was unintentional and not during the perpetration of other felonious activity." *Id*. at 2.

## B

As Bennett emphasizes in his motion, the portion of § 1111(a) concerning a pattern or practice of assault against a child was added with Congress's enactment of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (PROTECT Act). The PROTECT Act is responsible for the clause in § 1111(a) that makes a killing "perpetrated as a part of a pattern or practice of assault or torture against a child or children" first-degree murder. *See* Pub. L. 108–21, Title 1, § 102, 117 Stat. 652.

Bennett claims that based on the language of § 1111(a), it is not clear whether the pattern or practice of assault "need to be accompanied by the traditional 'malice aforethought' . . . or if instead Congress intended that causing death even unintentionally, and merely as a part of a prior pattern of assault, is sufficient to make the killing murder in the first degree." Def.'s Mot. Dismiss 5. This argument does not address the fact that all murders under the federal general murder statute require a finding of malice aforethought on the part of the perpetrator. The felony murder rule simply provides that "the underlying felony, even though it may not be 'premeditation,' is legally sufficient to transform the unpremeditated murder into first degree murder." *United States v. Smallbear*, 368 F. Supp. 2d 1260, 1263 (D.N.M. 2005) (collecting cases). "Thus, to prove the 'malice aforethought' element of felony murder, the prosecution only need show commission of the specified felony." *United States v. Pearson*, 159 F.3d 480, 485 (10th Cir. 1998) (collecting cases).

The statute is not confusing—§ 1111(a) defines murder as any killing with "malice aforethought," and necessitates that any first-degree murder be a killing that is "willful,

deliberate, malicious, and premeditated," or "committed in the course of perpetrating one of the serious felonies listed in § 1111." *Pineda-Doval*, 614 F.3d at 1037. Congress has decided that a pattern or practice of assault on a child is one such "serious felony."

Bennett argues that the pattern or practice of assault clause creates something short of felony murder, indicating that "[i]t seems a stretch to believe that Congress intended to expand the federal felony murder doctrine by creating a new 'misdemeanor murder' crime punishable as first degree murder." Def.'s Mot. Dismiss 3. But federal courts have long recognized that "Congress has the power to define criminal punishments . . . ." *United States v. Waupoose*, 627 F. Supp. 2d 930, 937 (E.D. Wis. 2008) (citing *Chapman v. United States*, 500 U.S. 453, 467 (1991)). Indeed, as established by the Supreme Court in *Chapman*, "[d]eterminate sentences were found in this country's penal codes from its inception, and some have remained until the present." 500 U.S. at 467 (specifically citing to 18 U.S.C. § 1111, the "federal first-degree-murder statute").

Moreover, far from creating a new "misdemeanor murder" rule, courts have concluded that a pattern or practice of assault on a child is a "listed felony" that supports first-degree murder. *See Pineda-Doval*, 614 F.3d at 1038 n.12 (listing "part of a pattern or practice of assault or torture against a child" as "one of the enumerated felonies that can support a felony-murder conviction."); *United States v. Williams*, No. 06-00079, 2007 WL 3085447, at *1 (D. Haw., Oct. 22, 2007) (defining murder due to a "pattern and practice of assault" against a child as "first degree felony murder" in violation of 18 U.S.C. § 1111); *Malicoat v. Mullin*, 426 F.3d 1241, 1254 (10th Cir. 2005) (felony-murder conviction under 18 U.S.C. § 1111(a) "only required commission of *felonies listed in the statute*."); *see also Bews v. Morgan*, 189 F.3d 472, 1999 WL 535797, at *2 (9th Cir. 1999) (holding that Washington's homicide by abuse statute—involving

- 13 -

"regularly or frequently assaulting or torturing a child and then causing that child's death"—supported a felony-murder charge).

Thus, given Congress's authority to establish sentences for misconduct and its express enactment of a pattern of assault in § 1111(a), Bennett's claim—that it could not have been Congress's intent to punish these types of homicide by abuse crimes as first-degree murders—is without merit.

## C

Bennett also argues that some portions of § 1111(a) are unconstitutionally vague. He first claims that it is unclear "what it means to be 'part of a pattern.'" Def.'s Mot. Dismiss 5. Although he concedes "pattern" is defined by the relevant statute, he continues: "there is no definition of what constitutes an 'assault' for Sec. 1111(a) purposes." *Id*. He also complains that there "is no description or limitation on when those [prior] assaults need occur in relation to the death causing event," and "no description or limitation regarding what connected-ness the prior assaultive acts need to have in relation to the death-causing event." *Id*. at 6. None of these arguments, however, support Bennett's contention that § 1111(a) is unconstitutionally vague.

## 1

It is a fundamental component of due process that a law is void-for-vagueness "if its prohibitions are not clearly defined." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 533 (6th Cir. 1998) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). The Supreme Court has explained that vague laws offend several important values:

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

- 14 -

*Grayned*, 408 U.S. at 108 (footnotes omitted).  When criminal penalties are at stake, a relatively "strict test" for vagueness is warranted.  *Peoples Rights*, 152 F.3d at 533 (collecting cases).  In general, the "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (collecting cases).

**2**

Section 1111(a), and all of the terms Bennett complains of, define the prohibited conduct "with sufficient definiteness that ordinary people can understand what conduct is prohibited." The statute is not unconstitutionally vague.

First, as the government—and even Bennett himself—emphasizes, the term "pattern or practice" is defined by § 1111: "the term 'pattern or practice of assault or torture' means assault or torture engaged in on at least two occasions."  § 1111(c)(4).  Moreover, the term "assault" is also defined: "the term 'assault' has the same meaning as given that term in section 113."  And although 18 U.S.C. § 113 lists various assaults instead of defining the term, *see* § 113(a)(1)–(8), assault is a common-law term of established meaning.  *See*, *e.g*., *United States v. Gagnon*, 553 F.3d 1021, 1026 (6th Cir. 2009) ("If Congress meant only assault it could have said only assault, which is all it said in 18 U.S.C. § 113."); *United States v. Stewart*, 568 F.2d 501, 504 (6th Cir. 1978) (indicating that assault as used in § 113, "undefined in the statute itself" was "no doubt intended to embrace the common law meaning of that term.").  As here, "where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning."  *United States v. Turley*, 352

U.S. 407, 411 (1957).  So contrary to Bennett's assertion, both "pattern or practice" and "assault" are not vague terms as used in § 1111(a).

Bennett's arguments concerning the proximity and "connected-ness" of the prior assaults are also without merit.  This follows from the fact that courts examine vagueness challenges to statutes not threatening First Amendment interests "in light of all the facts of the case at hand; the statute is judged on an as-applied basis."  *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) (collecting cases).  Accordingly, there is no need for the statute to establish how closely related or connected the prior assaults must be; rather, the charged conduct itself must be sufficient to overcome the vagueness challenge.  *See Bews*, 189 F.3d 472, 1999 WL 535797, at *1 (holding that it was not necessary to discern "the precise number or frequency of assaults that would constitute a pattern or practice" so long as the charged conduct sufficiently did so).  As applied to the facts, the alleged assaults ("similar acts, against the same victim, over a period of less than three weeks[,]" Pl.'s Resp. Dismiss 8) form a "pattern or practice" as used in § 1111(a).  *See Bews*, 189 F.3d 472, 1999 WL 535797, at *1 ("six or more assaults over a period of approximately eight months is sufficient to demonstrate a 'pattern or practice.'").

Because "pattern or practice" and "assault" as used in § 1111(a) are not "so vague that men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application," *United States v. Lanier*, 520 U.S. 259, 266 (1997) (collecting cases), Bennett's argument fails.  *See also United States v. Donley*, 878 F.2d 735, 739 n.7 (3d Cir. 1989) (finding "no merit in appellant's other assertions that the underlying statute defining the crime for which he was sentenced, 18 U.S.C. § 1111, is unconstitutionally vague").

**D**

Finally, Bennett asserts that a conviction under § 1111(a) based upon a pattern or practice of assault on a child, and the mandatory life sentence that would follow, would violate his Eighth Amendment right to be free from cruel and unusual punishment.

But at this point, Bennett lacks standing to raise such a challenge. The Supreme Court has explained that an examination of the Eight Amendment, and its attendant history, "confirms that it was designed to protect those *convicted of crimes*." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (emphasis added); *see also Palermo v. Rorex*, 806 F.2d 1266, 1271 (5th Cir. 1987) ("The cruel and unusual punishment clause of the Eighth Amendment applies only in criminal actions, following a conviction."). As Bennett has not been convicted under § 1111(a), his Eighth Amendment argument is premature and will be dismissed without prejudice.

**V**

Accordingly, it is **ORDERED** that Bennett's motion to sever, ECF No. 31, is **GRANTED** in part and **DENIED** in part. Counts 5, 6, and 7—contained in the first superseding indictment, ECF No. 11—are **SEVERED** from Counts 1, 2, 3, and 4.

It is further **ORDERED** that Bennett's motion for a bill of particulars, ECF No. 32, is **DENIED**.

It is further **ORDERED** that Bennett's motion for discovery, ECF No. 34, is **DENIED** as moot.

It is further **ORDERED** that Bennett's motion to dismiss count one, ECF No. 36, is **DENIED** in part with prejudice and **DENIED** in part without prejudice. If he is convicted under

18 U.S.C. § 1111(a), Bennett may challenge the statute based upon his Eighth Amendment protection against cruel and unusual punishment.

Dated: December 4, 2013                                          s/Thomas L. Ludington
                                                                THOMAS L. LUDINGTON
                                                                United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 4, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS