UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

        Plaintiff,                CASE NO. 12-20459

v.                                    Hon. Thomas L. Ludington
                                        United States District Judge

ANTHONY BENNETT,

        Defendant.

## United States' Response Opposing
## the Defendant's Motion for Compassionate Release

Eight years ago Anthony Bennett savagely beat a four year old boy to death. He pleaded guilty to second degree murder and was sentenced to 40 years in prison. Having served about twenty percent of that sentence, Bennett filed his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Even if he had exhausted his administrative remedies—he hasn't—and had a heightened risk for Covid-19—he doesn't—his motion should be denied for a simple reason: Bennett remains a danger to the community and his offense requires continued incarceration.

Bennett's motion should be denied.

To begin with, although Bennett claims to have requested release from his warden in March, the prison has no record of a request. As this Court recognized over two months ago, a prisoner must exhaust his administrative remedies before

1

seeking relief from the sentencing court. *United States v. Mathews*, 2020 WL 1873360 (E.D. Mich. Apr. 15, 2020) (Ludington, J.); see also *United States v. Alam*, ___ F.3d ___, No. 20-1298, 2020 WL 2845694 (6th Cir. June 2, 2020). Bennett's motion can be dismissed on this alone. *Id.*

And even if the Court accepts Bennett's claim that he exhausted his administrative remedies, Bennett does not satisfy the substantive requirements for compassionate release. Even assuming a defendant facing a heightened risk from Covid-19 could satisfy the criteria in § 1B1.13(1)(A) & cmt. n.1, Bennett has not claimed to have a condition that places him at higher risk from Covid-19.

But beyond these, Bennett's motion should be denied for a more straightforward reason: he cannot be released because he is a danger to the community. USSG § 1B1.13(2). And the § 3553(a) factors—which the Court must also consider under § 3582(c)(1)(A)—foreclose his release.

The Bureau of Prisons has taken significant steps to protect all inmates, including Bennett, from Covid-19. Since January 2020, the Bureau of Prisons has implemented "a phased approach nationwide," implementing an increasingly strict protocol to minimize the virus's spread in its facilities. *Wilson v. Williams*, ___ F.3d ___, No. 20-3447, 2020 WL 3056217, at *2 (6th Cir. June 9, 2020). And the Bureau of Prisons has assessed its entire population to determine which inmates face the most risk from Covid-19, pose the least danger to public safety, and can

safely be granted home confinement. As of June 15, 2020, this process has already resulted in at least 4217 inmates being placed on home confinement. *See* [BOP Covid-19 Website](). Especially given the Bureau of Prisons' efforts—and "the legitimate concerns about public safety" from releasing inmates who might "return to their criminal activities," *Wilson*, 2020 WL 3056217, at *11—the Court should deny Bennett's motion for compassionate release.

## Background

On June 21, 2012, Anthony Bennett killed four year old Carnel Chamberlain. By his admission at the time of the plea, Bennett punched Carnel, striking him at least twice. Bennett fractured Carnel's skull in two places: in an area of his forehead just above and to the right of his nasal bone and in his temporomandibular joint, the joint which connects the jaw and the temporal bone of the skull. Bennett then stood by as Carnel died at his feet.

After killing Carnel, Bennett destroyed his body, burning it into an unidentifiable state. Bennett then hid what was left of Carnel under the front porch of the residence he shared with Carnel's mother.

That night, Bennett first lied to Carnel's mother and then to the public about Carnel. Bennett told all who would listen that Carnel had simply gone missing. Based on his deceit, an incredible number of people—family, tribal members and others—immediately began what would become a week-long search for Carnel.

The search ended on June 28, 2012, when the Michigan State Police crime laboratory confirmed that Carnel's remains had been located in an area under the front porch of the residence.

Bennett pleaded guilty to second degree murder. He was sentenced to 40 years' imprisonment on May 22, 2014. (R. 55: Judgment, 359). He is 28 years old, and his projected release date with credit for good time is 2048. Bennett does not claim to have a medical problem which might support his motion for release. Nevertheless, Bennett has moved for compassionate release, citing only the Covid-19 pandemic. Bennett claims that he requested compassionate release from the warden on March 26, 2020. The Bureau of Prisons reports that it has not received a request from Bennett.

## Argument

### I. The Court should deny Bennett's motion for compassionate release.

Bennett's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow.

4

*United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, ___F.3d ___, No. 20-1298, 2020 WL 2845694, at *1 (6th Cir. June 2, 2020). And as the Sixth Circuit recently held, this statutory exhaustion requirement is mandatory. *Alam*, 2020 WL 2845694, at *1–*4.

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A). As with the identical language in § 3582(c)(2), compliance with the policy statements incorporated by § 3582(c)(1)(A) is mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

5

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

### A. Bennett has not exhausted his administrative remedies as required by statute.

The Court must dismiss Bennett's motion if it finds he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Until recently, only the Bureau of Prisons could move for compassionate release. The First Step Act of 2018 amended the statute, permitting defendants to move for it too. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018).

But the provision permitting a defendant-initiated motion includes an exhaustion requirement. *Id.* A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's

6

facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, ___F.3d ___, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020). As the Sixth Circuit recently held in *Alam*, this statutory exhaustion requirement is "a mandatory condition" that "must be enforced" when the government raises it. *Id.* at *1–*4; *accord United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

There is no record that Bennett complied with § 3582(c)(1)(A)'s mandatory exhaustion requirement. Although Bennett claims to have requested compassionate release, he has not submitted evidence of that claim and the Bureau of Prisons has no record of it. It is Bennett's burden to show that he has exhausted his remedies and at this point, he has failed to meet it. *United States v. Evans*, 2020 WL 2549964, *2 (W.D.Tenn., May 19, 2020). If Bennett has not exhausted his administrative remedies, his motion must be dismissed. *Alam*, 2020 WL 2845694, at *5. To the extent the Court cannot resolve these competing factual claims about exhaustion, the Court can instead decline Bennett's motion on the merits.

### B. Bennett is not eligible for compassionate release under the mandatory criteria in USSG § 1B1.13.

Even if Bennett had exhausted his administrative remedies, compassionate release would be improper. Compassionate release must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence

7

reduction" under § 3582(c)(1)(A), as well developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t).

Because the Sentencing Commission has fulfilled Congress's directive in USSG § 1B1.13, that policy statement is mandatory. Section 3582(c)(1)(A)'s reliance on the Sentencing Commission's policy statements mirrors the language governing sentence reductions under 18 U.S.C. § 3582(c)(2) for retroactive guideline amendments. *Compare* § 3582(c)(1)(A) *with* § 3582(c)(2). When Congress uses the same language in the same statute, it must be interpreted in the same way. *Marshall*, 954 F.3d at 830. In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014); *accord Dillon v. United States*, 560 U.S. 817, 830 (2010).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend the substantive requirements for release. *United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *2–*3 (10th Cir. Mar. 26, 2020); *United States v. Mollica*, No. 2:14-CR-329, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020). Section 1B1.13 remains binding.

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement limits

8

"extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in Program Statement 5050.50. USSG § 1B1.13 cmt. n.1.

The Covid-19 pandemic does not, by itself, qualify as the type of inmate-specific condition permitting compassionate release. The Bureau of Prisons has worked diligently to implement precautionary measures reducing the risk from Covid-19 to Bennett and other inmates. *See Wilson v. Williams*, ___ F.3d ___, No. 20-3447, 2020 WL 3056217, at *2, *8 (6th Cir. June 9, 2020). Thus, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *cf. Wilson*, 2020 WL 3056217, at *11.

Bennett's age and medical condition likewise do not satisfy the requirements for release in USSG § 1B1.13 cmt. n.1, even when considered in combination with the Covid-19 pandemic. Bennett is 28 years old and not at risk based on his age. According to his medical records, Bennett has two recurrent medical conditions: hepatitis C and an inflamed gallbladder that was removed in March 2020.

9

According to the CDC, there is no information that people with hepatitis C are at an increased risk for Covid-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. Nor has Bennett claimed or presented evidence that his gallbladder problems put him at risk for complications if he also became infected with Covid-19. Furthermore, his gallbladder was removed, which may have resolved the problem, and at the very least shows that the Bureau of Prisons' medical staff is attending to his condition.

Bennett has been diagnosed with asthma, but this also does not appear to put him at higher risk factor for complications from Covid-19. Bennett has not described this asthma and his medical records do not suggest that it is moderate or severe. While in prison, Bennett has not complained of anything approaching moderate asthma. Indeed, the only notations in his file are for an inhaler prescription to be used as needed and a report on February 26, 2019, that Bennett has an asthma attack roughly three times a year; that his last attack was about five months before; and that the inhaler was effective at resolving the attack. By comparison, the CDC has warned that individuals with "moderate to severe" asthma may be at a higher risk of developing serious illness if they contract Covid-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. "[A]ccording to the National Asthma Education and

Prevention Program Expert Panel Report's Guidelines for the Diagnosis and Management of Asthma,

> Moderate asthma is characterized as daily symptoms, weekly nighttime awakenings, daily use of preventative medication, some limitation with respect to normal activity, and a Forced Expiratory Volume in One Second (FEV) measurement of between sixty and eighty percent of the predicted value. Severe asthma is characterized as symptoms throughout the day, as many as seven nighttime awakenings per week, use of preventative medication several times per day, extreme limitation with respect to normal activity, and an FEV measurement of less than sixty percent of the predicted value.

*United States v. Brown*, No. 19-20202, 2020 WL 2812776, at *3 (E.D. Mich. May 29, 2020). Bennett has not claimed and his records do not support that he has any diagnosis or even symptoms approaching this degree. So whether considered alone or in combination with the Covid-19 pandemic, Bennett's age and medical condition do not satisfy the initial eligibility criteria for release under USSG § 1B1.13 cmt. n.1. *See United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5–*6 (E.D. Mich. May 15, 2020).

But even if Bennett's conditions did satisfy the eligibility criteria, Bennett remains ineligible for compassionate release because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." It thus prohibits the release of violent offenders. *See United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010); *United States v. Knight*, No.

11

15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020). It is hard to imagine a more violent and dangerous individual than Bennett. In 2012, Bennett killed a four year old. Before then, he had been adjudicated in juvenile court for assault with the intent to do great bodily harm and domestic violence and convicted in district or tribal court of family violence; resisting arrest, twice; assaulting an officer, twice; and assaulting a prison officer. In the six years he's spent in BOP custody since he murdered a child, he's had more than a dozen violations, including possession of a dangerous weapon twice and threatening another inmate with bodily harm because he "was in [his] feelings."

Adhering to § 1B1.13(2) is especially important given the current strain on society's first responders and the rise in certain types of crime during the Covid-19 pandemic. Police departments in many cities have been stretched to their limits as officers have either contracted Covid-19 or been placed in quarantine. Some cities, including Detroit, have seen spikes in shootings and murders. Child sex predators have taken advantage of bored school-aged kids spending more time online. Covid-19-based fraud schemes have proliferated. There are real risks to public safety right now, and those risks will only increase if our community is faced with a sudden influx of convicted defendants.

Because Bennett's release would endanger the community, § 1B1.13(2) prohibits reducing his sentence under § 3582(c)(1)(A). He is not eligible for compassionate release.

### C. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous, he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Bennett eligible for compassionate release, the § 3553(a) factors should still disqualify him.

Under section 3553, the Court must consider the nature of the offense and the history and characteristics of the offender. 18 § 3553(a)(1). In 2012, Bennett beat a four year old boy to death. After watching the child die at his feet, Bennett burned

13

this child's body beyond recognition and lied to an entire community searching for a missing child. It is difficult to imagine a more serious or heinous offense. Forty years imprisonment is the minimum sentence that would reflect the seriousness of this offense.

Nor does Bennett's history counsel otherwise. He has had multiple violent criminal convictions before this offense. And since his incarceration, Bennett has continued to act out violently. He has repeatedly possessed dangerous weapons and he has threatened another inmate. His motion should be denied.

## II. If the Court were to grant Bennett's motion, it should stay the release order pending any appeal by the United States.

If the Court were inclined to grant Bennett's motion, despite the government's arguments above, the government would request that the Court's release order include two provisions. First, the Court should order that he be subjected to a 14-day quarantine before release. Second, the Court should stay its order pending any appeal by the government to the Sixth Circuit. More specifically, the government would request that if the government files a notice of appeal before the 14-day quarantine ends, the Court's order would automatically be stayed through the completion of any appeal proceedings.

## Conclusion

Bennett's motion should be denied.

Dated:  June 17, 2020               Respectfully submitted,


                                    MATTHEW SCHNEIDER
                                    United States Attorney

                                    s/ CRAIG F. WININGER
                                    Assistant United States Attorney
                                    211 Fort Street, Suite 2001
                                    Detroit, MI 48226
                                    Phone: (313) 226-9569
                                    craig.wininger@usdoj.gov
                                    P57058

## **CERTIFICATION OF SERVICE**

On June 17, 2020, an employee of the U.S. Attorney's Office filed the above document with the Clerk of the Court using the ECF system, and mailed a copy to Anthony Bennett, Id No. 47387-039, USP Tucson, USP Penitentiary, P.O. 24550, Tucson, AZ 85734.

                                    s/ CRAIG F. WININGER
                                    Assistant United States Attorney